GUERRERO et al. v. WRIGHT et al.

No. 9832.

Court of Civil Appeals of Texas.   Austin.

Dec. 7, 1949.

Rehearing Denied Dec. 14, 1949.

Kyle & Walker, by Henry Kyle, of San Marcos, and Blair, Kendall & Randle, by Gaynor Kendall, of Austin, for appellants.

Tom C. Johnson, of San Marcos, and Strasburger, Price, Holland, Kelton & Miller, by Hobert Price, of Dallas, for appellee.

ARCHER, Chief Justice.

This is an action for damages on account of injuries which resulted in the death of Alfredo Guerrero, and which were sustained by him in a collision between the farm tractor driven by deceased and a cattle truck driven by appellee Gerald Allen. The collision is alleged by appellants (plaintiffs below) to have been caused by the negligent acts and conduct of Allen in driving the cattle truck, in the course of his employment as agent and servant of appellee Fred Wright. The suit was instituted and maintained by appellant Eulalia Guerrero, widow of deceased, for herself and as next friend of Irma, Nelda, Dora and Billie Ann Guerrero, minor children of deceased, and as independent executrix of the estate of deceased.

Trial was to a jury, and, upon its special issue verdict, all issues were answered favorable to defendants, and judgment was rendered (on motion of appellees) that appellants take nothing.

The case is before us on six points assigned as error.

Point No. 1 complains of the action of the court in admitting as part of the res gestae the testimony of witness Howell, to the effect that some 15 or 20 minutes after the collision, and away from the scene thereof, and while Allen, one of the defendants and the driver of the truck involved in the accident, was going to report the collision to his employer, that Allen told the witness that the tractor driven by deceased, Alfredo Guerrero, made a quick or sharp left turn out in front of the truck driven by Allen, and that such testimony was admitted over objection that the declaration was self-serving and an exculpatory statement, and was a retelling of past events, made after opportunity for reflection, and without any predicate laid by appellees to bring the declaration within the res gestae rule.

We believe that the admission of this testimony of witness Howell was error, and that the first assignment should be and is sustained.

Appellee Allen testified:

"Q. You were that far from the stripe on the right? A. Yes, sir, when I first seen the tractor.

"Q. About how far is that? A. About 2 feet.

"Q. You were about 2 feet from the right edge of the outside lane? A. Yes, sir.

"Q. You were how far from the tractor when you first saw it? A. I imagine 200 feet.

"Q. Were you at the top of the hill? Is there a hill back towards San Antonio from where you first saw it? A. Yes, sir.

"Q. Didn't you see the tractor when you came over that hill? A. Just as I came up over the hill I seen the tractor.

"Q. As you came over the hill you saw the tractor? A. Yes, sir.

"Q. Isn't that better than 200 feet? A. I don't know, I didn't measure how far, never stepped off 200 feet, I don't know how far.

\*  \*  \*  \*  \*  \*

"Q. You say the middle of your vehicle was right down the middle of that line? A. Yes, sir, I believe I had—

\*  \*  \*  \*  \*  \*

"Q. When did you talk to the first person after you got out of the truck? A. After we got him in the ambulance. Several of them asked how it happened.

"Q. Who asked you? A. I don't know, there were several around there.

"Q. But up until after you put him in the ambulance you did not tell anybody about how it happened? A. Nothing but the Highway Patrolman when he came down there, when he got there.

"Q. Did you talk to Mr. Clark about the collision after it happened? A. Well,

there was a man there. He said he was a Railroad Commission guy. I talked to him.

"Q. Was that after you loaded Fred Guerrero in the ambulance? A. Yes, sir.

"Q. Right after the collision did a man run up to you, up there by the side of your truck? A. No, sir, I was out at the time the truck got set good.

"Q. You were out; there was nobody that ran up to you while you were standing there by the truck? A. No, sir, I jumped out and run back up to where the tractor was.

"Q. No one talked to you from the time you jumped out until you went back up there where the tractor was? A. No, sir.

"Q. Did you tell Clark what you had hit? A. He could see, he was there.

"Q. But you didn't tell him? A. I just tell him the way it happened.

"Q. What did you tell him? A. I told him he pulled out in front of me.

"Q. Was that what you told Mr. Clark? A. Yes, sir.

"Q. Did you tell anybody else anything else, anything different? A. No, sir.

"Q. You did not tell the Highway Patrolman anything differently? A. Not anything I know of.

"Q. You would have known if you had, would you not? A. Yes, sir."

The testimony of witness Howell is:

"Q. Did you talk to the boy? A. Yes, sir.

"Q. When was it that you talked to him? A. It was after I had called the State Patrol.

"Q. Did anyone ask you to call the State Patrol? A. No, there was nobody there to ask.

"Q. Where did you call the State Patrol? A. From the Swing-In Filling Station.

"Q. Did anyone go to the Swing-In with you in your car? A. Not when I called the Patrol.

"Q. Did anyone go with you to the Swing-In? A. The truck driver went with me. I carried him to Swing-In to call Mr. Wright after I had called the Patrol.

"Q. About how long after the accident was it that you went there with the boy to the filling station to call his boss? A. I couldn't say exactly.

"Q. I know that. About? A. Maybe 15 or 20 minutes.

* * * * * *

"Mr. Kyle: We object to any statement made away from the scene of the collision.

"Mr. Kendall: Also that it is a self-serving declaration.

"The Court: Objection overruled.

"Mr. Kyle: You overrule the objection?

"The Court: Yes, sir.

"Mr. Kyle: Your Honor, if the Court please, we understand the point we were making that a statement away from the scene of the collision can not be res gestae statement, made 15 minutes or more after the collision in question, being a self-serving declaration and is not admissible under the res gestae rule. I presume that is the rule under which he is—

"Mr. Strassburger: All right, Your Honor, I am offering it under res gestae. I have a case to show up to 30 minutes is not too long.

"Mr. Kyle: We object to any statement made away from the scene of the collision; it is not admissible under any circumstances. We are not objecting to the one made at the time, but any statement made away from the scene of the collision is not admissible under the circumstances.

"The Court: Mr. Sheriff, retire the jury.

"Questions by Mr. Strassburger:

"Q. You picked him up at the scene, I believe, did you? A. That is correct.

"Q. And did he seem nervous or excited? A. No.

"Q. What was he volunteering to you as to how the accident happened? A. He told me that he was traveling along and he saw the tractor, and all of a sudden the tractor made a quick left turn out in front of him.

"Mr. Kyle: Let me ask one question:

"Questions by Mr. Kyle:

"Q. Had they moved the body of Fred Guerrero from the scene of the collision at the time you took him down to the filling station? A. I don't remember whether they had or not.

"Q. This statement he made to you was made after you left the scene of the collision? A. After.

"Q. After you had picked him up and started to the filling station? A. I made two trips in there. In the rush, I was kind of excited. I kind of got things balled up a little. First, I stopped and I went down to this Conoco Station to call an ambulance, and they didn't have a phone. So I went on down to the Swing-In Station. In the meantime I hadn't seen anyone but the fellow laying in the ditch. I called the ambulance and called the sheriff, and he asked me to call the State Patrolman to save time. I know the State Patrolman. While I was calling him the ambulance came by and I followed the State Patrolman then back up to where the crash was, and I picked up the boy in between,—I don't know how it happened. I picked him up before the State Patrolman got there.

"Q. After the ambulance— A. I was up there when the ambulance picked the fellow up.

"Q. After the ambulance left the scene? A. I carried him back to the station and he called Mr. Wright. Then I followed the State Patrolman back up to the crash, and I told the State Patrolman that Allen was at this station calling Wright.

"Q. Did he tell you, make this statement to you, Gerald Allen, was it before he called Wright or after he called Wright? A. It was before.

"Q. While you were on the way down? A. Yes.

"Q. But away from the scene of the collision? A. That is right.

"The Court: How far away? A. I guess about 300 yards, 500 yards.

"The Court: I am inclined to believe it is admissible. You can take your exception.

 *     *     *     *     *     *

"Q. I say the last question, before the jury went out, was what was the statement that the boy volunteered to you about how the accident happened? What did he tell you? A. I picked up the truck driver, carried him to make a call to Mr. Wright. He told me the tractor made a quick or sharp left turn out in front of him."

It is to be observed that counsel for appellees offered the declaration as part of the res gestae.

■■ The rule concerning res gestae is stated in Pacific Mut. Life Ins. Co. of California v. Schlakzug, 143 Tex. 264, 183 S.W. 2d 709, 712:

" * * * The rule as applied to this case is:

"(a) All declarations or exclamations uttered by the parties to a transaction and which are contemporaneous with and accompanying it and are calculated to throw light upon the motives and intentions of the parties are admissible as part of the res gestae. International & G. N. Ry. Co. v. Anderson, 82 Tex. 516, 17 S.W. 1039, 27 Am.St.Rep. 902; City of Galveston v. Barbour, 62 Tex. 172, 50 Am.Rep. 519.

"(b) All declarations or exclamations which are made under circumstances which raise a reasonable presumption that they are the spontaneous utterances of thoughts created by or springing out of the transaction itself and so soon thereafter as to exclude the presumption that they are the result of premeditation or design are admissible as res gestae. International & G. N. Ry. Co. v. Anderson, supra; City of Galveston v. Barbour, supra; City of Houston v. Quinones, [142 Tex. 282], 177 S.W.2d 259. The rule just stated, however, cannot be applied so as to admit hearsay or self-serving declarations under the guise of res gestae. City of Houston v. Quinones, supra."

■ Where the declaration is not contemporaneous with the event to which it relates, the party offering such statement sustains the burden of showing that the statement was made under circumstances disclosing lack of opportunity for reflection and fabrication on the part of declarant. Wall & Stabe Co. v. Berger, Tex.Civ.App.,

212 S.W. 975; Ford v. State, 40 Tex.Cr. R. 280, 50 S.W. 350; Missouri, K. & T. R. Co. v. Tarwater, 33 Tex.Civ.App. 116, 75 S.W. 937; 32 C.J.S., Evidence, § 418, page 48.

██ The condition of appellee Allen, mental or physical at the time of his statement was not such as to justify any presumption that his declaration was an unreflecting, spontaneous utterance, such as to bring it within the res gestae rule; and generally the res gestae remains with the locus in quo, and does not follow the parties about after the principal act is completed. 32 C.J.S., Evidence, § 414, page 42; Rosenthal Dry Goods Co. v. Hillebrandt, Tex.Civ.App., 280 S.W. 882, error dis.; Red Arrow Freight Lines v. Gravis, Tex. Civ.App., 84 S.W.2d 540; A. B. C. Storage & Moving Co. v. Herron, Tex.Civ.App., 138 S.W.2d 211, error dis.; City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259.

The issues whether appellee Allen, the driver, was negligent, on one hand, and those on whether the deceased turned the tractor to the left just before the collision, were in contest before the jury. The answers of the jury to all of the issues show that they accepted Allen's version of how the accident happened, corroborated by the statement he made to Howell, and we believe that the admission of such declaration was prejudicial error. Andress v. Crump, Tex.Com.App., 29 S.W.2d 1038.

██ Neither is admission nor exclusion of statements offered as part of the res gestae a matter which addresses itself to the discretion of the trial court. In Pacific Mutual Life Ins. Co. of California v. Schlakzug, 143 Tex. 264, 183 S.W.2d 709, 712, it is said:

"It is said in some of the cases that the application of the res gestae rule addresses itself largely to the discretion of the trial court. In our opinion the question as to whether or not evidence is admissible as res gestae is a law question which an appellate court has the same power to pass on that it has to pass on any other law question. * * *

"The rule just stated, however (speaking of par. (b) of the res gestae rule as there stated, pertaining to declarations not contemporaneous in time with the event), can not be applied so as to admit hearsay or self-serving declarations under the guise of res gestae."

In Texas Interurban Ry. Co. v. Hughes, Tex.Com.App., 53 S.W.2d 448, 451, Justice Sharp said: " * * * Statements made must be either a part of the transaction or made under such circumstances as to raise a reasonable presumption that they are spontaneous utterances or facts created by or arising out of the transaction itself. If they are not in their nature a part of the fact, they do not constitute a part of the res gestae, and are inadmissible, though closely related in point of time. If this general rule announced by the authoritative decisions was not adhered to, it would be made the means of introducing indirect testimony in such a way as to make it injurious and prejudicial to litigants."

██ We overrule appellants' Point No. Two, to the effect that the trial court should not have submitted the issue of contributory negligence. Allen testified that Guerrero suddenly turned to the left.

██ We also overrule appellants' Points Nos. 3 and 4, under which the appellants complain of the fact that the jury answered "None" to issues inquiring about the damage sustained by the widow and by the children as the result of the death of their husband and father. Harrison v. Missouri, Kansas & Texas R. Co. of Texas, Tex. Civ.App., 89 S.W.2d 455; Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S.W.2d 334.

Since the matters complained of in Points Nos. 5 and 6 will doubtless not recur, and in view of our disposition of this case as hereinabove stated, we omit any discussion of these points.

The trial court's judgment is reversed and the cause remanded.

Reversed and remanded.