Mrs. Chester **BILLIOT**, Individually and as Administratrix of the Estate of her Minor Daughter, Kathy Ann, Appellant,

v.

**SEWART SEACRAFT, INC.**, Appellee.

No. 23888.

United States Court of Appeals
Fifth Circuit.

Aug. 18, 1967.

Bruce Waters, Baton Rouge, La., for appellant.

John G. Torian, II, Lafayette, La., Gerard T. Gelpi, New Orleans, La., Davidson, Meaux, Onebane & Donohoe, Lafayette, La., and Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for appellee.

Before HUTCHESON and GODBOLD, Circuit Judges, and NOEL, District Judge.

HUTCHESON, Circuit Judge:

This appeal is from a dismissal by summary judgment of the libel instituted by appellant to recover damages for the death of her husband. We reverse the summary judgment and remand.

Appellant, the administratrix of the estate of her husband, Chester Billiot, originally filed this action in the court below against Sewart Seacraft, Inc. and J. Ray McDermott & Co., Inc. to recover damages for Billiot's death. She claimed a right to recover for herself and for her minor daughter. The complaint alleged that the injury occurred while decedent, a seaman working on a towboat owned by Seacraft, was engaged in re-fueling the towboat from a barge belonging to McDermott. It is claimed that the decedent "slipped and fell or was thrown" from either the barge or the towboat when a ship, also owned by McDermott and tied to the barge, suddenly moved away from it, causing a slack line to become taut and strike the decedent. He was taken to a hospital where he died a week later. The complaint stated that the injury happened within the Louisiana state maritime boundaries. The asserted liability of Seacraft and McDermott was predicated upon the negligence of both and the unseaworthiness of their vessels, the towboat and barge respectively. The complaint in addition sought damages for Billiot's pain and suffering before he died.

Before the suit came on for trial, the appellant filed another complaint in a Louisiana state court. That complaint is not in the record, but it apparently was similar to the one filed in the court below except that it named several other defendants in addition to Seacraft and McDermott. In advance of trial in the state court, the appellant settled all her claims against McDermott and some of the other defendants, not including Seacraft, for $21,075. The general release received by McDermott expressly reserved all rights against Seacraft. Thereupon the appellant dropped McDermott from the action filed in the court below.

When the appellant returned to the court below to assert the reserved claims against Seacraft, the district court granted Seacraft's motion for summary judgment, relying solely on the appellant's settlement with McDermott. Apparently the court was of the opinion that the settlement operated as a matter of law to fully satisfy the appellant for all claims arising out of Billiot's death and that any further amounts recovered from Seacraft therefore would give her an impermissible double recovery of damages. We agree that the appellant should not be allowed to obtain a double

recovery, but under the facts of this case, we feel that, in restricting the appellant's recovery as a matter of law to a settlement with one of the two alleged tortfeasors, the district court may have denied appellant her right to receive adequate compensation.

■■■ The release effectively reserved appellant's rights against Seacraft.[1] We see no reason why appellant should not be permitted to sue Seacraft and obtain a verdict for the total damages caused by Seacraft, if any. A double recovery may be prevented by deducting the amount of the settlement payment from the total damages. Judgment then may be awarded to appellant for the balance. This procedure should fully compensate the appellant while not providing her with unjust enrichment.

This procedure has been used successfully in suits based on negligence in other areas of the law, see, e. g., State Farm Mut. Auto. Ins. Co. v. Bourne, 220 F.2d 921 (5th Cir. 1955); Cudd v. Great Amer. Ins. Co., 202 F.Supp. 237 (W.D.La.1962),[2] and we recently approved its use in a maritime tort case quite similar to the one before us. Loffland Bros. Co. v. Huckabee, 5 Cir., 373 F.2d 528 (March 2, 1967).

In *Loffland*, three suits brought by an injured seaman were consolidated. In two separate complaints, the plaintiff had sued his employer under different causes of action, for negligence under the Jones Act, 46 U.S.C. Sec. 688, and for maintenance and cure. The third suit, against Loffland, alleged negligence and unseaworthiness under the general maritime law. In advance of trial, the plaintiff settled all the claims against his employer for $11,000. Rather than holding that this settlement was all that the plaintiff was entitled to receive for his injuries, the court allowed the claim for damages against Loffland to proceed to trial. The jury found that Loffland was liable to the plaintiff for $42,500. In order to prevent an unjust double recovery of damages, the judge credited this verdict with the $11,000 payment plaintiff had received from his employer. Judgment was given for the balance of $31,500. On appeal by Loffland, the plaintiff filed a cross-appeal challenging the procedure by which the court reduced the verdict by the amount of the settlement. We affirmed the judgment of the district court, thereby approving the method which we now hold should have been used in the case at bar.

■■ In granting summary judgment, the court below relied on Romero v. Frank's Casing Crew & Rental Tools, Inc., 229 F.Supp. 41, aff'd per curiam, 342 F.2d 999 (5th Cir. 1965), also decided by that court. We decline to follow that case, which is inconsistent with *Loffland*, because the district court in *Romero* relied on decisions which are inapposite to the question presented here, namely, whether a plaintiff may sue his alleged employer-tortfeasor for damages after settling with an alleged third-party tortfeasor.[3] Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 525, 4 A.L.R.3d 517 (9th Cir. 1962); McCarthy v. American Eastern Corp., 175 F.2d 727 (3d Cir. 1949), cert. denied, 338 U.S. 911, 70 S.Ct. 349, 94 L.Ed. 561 (1950); Muise v. Abbott, 160 F.2d 590 (1st Cir. 1947); Smith v. Lykes Bros.-Ripley S.S. Co.,

---

1. Contrary to the old common-law rule, today a release intending to save the releasor's rights does not automatically surrender those rights. Aro Mfg. Co., Inc. v. Convertible Top Replacement Co., Inc., 377 U.S. 476, 501, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964). See also Petroleum Carrier Corp. v. Carter, 233 F.2d 402, 404 (5th Cir. 1956).

2. See also Sylvania Elec. Prod., Inc. v. Barker, 228 F.2d 842 (1st Cir. 1955), cert. denied, 350 U.S. 988, 76 S.Ct. 475,

100 L.Ed. 854 (1956); McKenna v. Austin, 77 U.S.App.D.C. 228, 134 F.2d 659, 148 A.L.R. 1253 (1943).

3. Moreover, *Romero* is distinguishable in one respect in that there the settling alleged tortfeasor was subrogated to the seaman's claims against his employer. The court refused to enforce such a subrogation on the ground that it was against public policy. In the case before us, the appellant did not subrogate McDermott to her claims against Seacraft.

105 F.2d 604 (5th Cir.), cert. denied, 308 U.S. 604, 60 S.Ct. 141, 84 L.Ed. 505 (1939). These decisions consider only the question whether a seaman, after recovering a judgment against his employer based on the latter's negligence, can sue the same employer a second time under a separate and different cause of action for maintenance and cure. The question frequently arises because some items of loss, such as wages, may be recovered either as damages under a negligence claim or under a claim for maintenance and cure. See Vickers v. Tumey, 290 F.2d 426, 435 (5th Cir. 1961). Of course the same item may not be recovered twice under separate causes of action.[4] Pacific Steamship Co. v. Peterson, 278 U.S. 130, 49 S.Ct. 75, 73 L.Ed. 220 (1928). Whether the item is recoverable in the second suit depends on a resolution of the factual issue whether, under the facts of each case, the item was included in the recovery of the first suit. But these cases do not have any bearing upon the general rule that an injured person may partially settle a negligence claim with one of two alleged tortfeasors, sue and obtain a verdict for total damages against the nonsettling alleged tortfeasor, and receive judgment for the difference between the total damages and the settlement. Loffland Bros. Co. v. Huckabee, 373 F.2d 528, supra; Cudd v. Great Amer. Ins. Co., supra; State Farm Mut. Auto. Ins. Co. v. Bourne, supra.

Guidance as to the causes of action available to the appellant on remand is found in Gillespie v. United States Steel Corp., 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964). There the Supreme Court adhered to its decision in Lindgren v. United States, 281 U.S. 38, 50 S.Ct. 207, 74 L.Ed. 686 (1930), which had held that "in passing § 33 of the Merchant Marine Act 1920, now 46 U.S.C. § 688 (1958 ed.), commonly called the Jones Act, Congress provided an exclusive right of action for the death seamen killed in the course of their employment, superseding all state death statutes which might otherwise be applied to maritime deaths, and, since the Act gave recovery only for negligence, precluding any possible recovery based on a theory of unseaworthiness." 379 U.S. at 154, 85 S.Ct. at 312. See also Hassan v. A. M. Landry & Son, Inc., 321 F.2d 570, 571 (5th Cir. 1963), cert. denied, 375 U.S. 967, 84 S.Ct. 486, 11 L.Ed.2d 416 (1964). But see Kenney v. Trinidad Corp., 349 F.2d 832, 840–841 (5th Cir. 1965) (dictum), cert. denied, 382 U.S. 1030, 86 S.Ct. 652, 15 L.Ed.2d 542 (1966). Furthermore, the Court noted that under Sec. 1 of the FELA, 45 U.S.C. Sec. 51, a right of recovery of damages for death is provided for the benefit of the surviving widow and children of a deceased employee. 379 U.S. at 156, 85 S.Ct. 308. And, the estate may claim damages for pain and suffering under a state survival statute preserving a "cause of action for unseaworthiness, which would not survive under the general maritime law." Id. at 157, 85 S.Ct. at 313. These causes of action, since authorized by the Jones Act, are available to appellant against Seacraft only if the latter was decedent's employer, which Seacraft denies.[5]

■ If the trial is to a jury, we think that the better procedure is to withhold evidence of the settlement from the jury which will determine the total damages, if any, caused by Seacraft. The trial judge will deduct from the verdict the settlement payment to arrive at the

---

4. Muise v. Abbott, supra, involves the same principle. There the seaman first settled a negligence claim with an alleged third-party tortfeasor and then sued his employer under a separate cause of action for maintenance and cure.

5. Since the complaint alleges that the injury occurred within Louisiana's maritime boundaries, reliance on the Death on the High Seas Act, 46 U.S.C. Secs. 761–767, would seem to be foreclosed even if that Act would otherwise be available in view of Gillespie. See Doyle v. Albatross Tanker Corp., 367 F.2d 465 (2d Cir. 1966).

amount which will adequately compensate the appellant.[6]

Reversed and remanded with directions.

6. "We can say positively when [this] method is employed, that the jury has brought in a verdict in an amount which they believe will adequately and justly compensate the plaintiff, that the proper deduction has been made because the Judge himself in the judgment makes the proper deduction."

"The other method would be to place evidence before the jury, with instructions to render a verdict, less the amount received. It occurs to us that this latter procedure, * * * [is undesirable] because, who would be able to positively say if the latter method were adopted, that the jury actually estimated the injury to the plaintiff and then deducted what he had already received." State Farm Mut. Auto. Ins. Co. v. Bourne, supra, 220 F.2d at 923.